IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

October 2, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

IN THE MATTER OF:       )

              )

The adoption of           )

              )

   DAMON ALAN KRATOCHVIL,     )

              )

       A Minor,         )

              )

by                     )

              )

              )

JAMES L. COONE and SONJA      )

COONE,               )

              )

      Petitioners-Appellees     )

              )

vs.                    )

              )

              )

DANNY ALAN KRATOCHVIL,      )

              )

      Respondent-Appellant     )

HAMILTON CHANCERY

C.A. NO. 03A01-9712-CH-00536

HON. R. VANN OWENS
CHANCELLOR

AFFIRMED AND REMANDED

BRUCE H. GUTHRIE, II, Chattanooga, for Appellant.

GLENNA M. RAMER, Chattanooga, for Appellees.

OPINION

McMurray, J.

In this adoption case, Danny Alan Kratochvil (respondent) appeals the trial court's order terminating his parental rights regarding his son, Damon Alan Kratochvil. The biological mother's parental rights were terminated by default judgment, and she is not a party to this appeal. We affirm the judgment of the trial court.

This action was originated by the filing of a "petition for termination of parental rights and adoption" by James L. Coone and Sonya S. Coone (petitioners). Mrs. Coone is the biological mother's half-sister. We note at the outset that the trial court's final order does not address the petitioners' request for adoption of Damon, but only terminates the respondent's parental rights. In the interest of judicial efficiency and economy, however, we will treat this action as an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.

Respondent raises several issues for our review, summarized as follows:

1.      Did the trial court err in finding that the respondent "abandoned" his son, as that term is statutorily defined?

2.      Was the respondent's constitutional right to due process violated in this case by the termination of his parental rights?

Our standard of review of this case is provided in T.C.A. § 36-1-113 (c), which states:

Termination of parental or guardianship rights must be based upon:

(1)      A finding by the court by clear and convincing evidence that the grounds for termination or [sic: of] parental or guardianship rights have been established; and

(2)      That termination of the parent's or guardian's rights is in the best interests of the child.

2

Thus, we review this case to determine if the statutory requirements for termination of parental rights have been demonstrated by clear and convincing evidence.

The trial court found the following facts, all of which are fully supported by the evidence in the record. Damon was born on October 13, 1995. Mrs. Coone, who is a nurse, checked on the new parents shortly after Damon was born. She stayed the entire day to take care of the new baby. Mrs. Coone testified that she did not see respondent hold his son that entire first day. The second day, Mrs. Coone returned to the hospital and took care of the baby while the parents watched television.

The fourth day after Damon's birth, the mother called Mrs. Coone and asked if she would help take care of him. Mrs. Coone went to the parents' apartment, which, according to the trial court's findings of fact, "was filthy. The floor was littered with dog feces and dog urine. There were dirty sanitary napkins on the floor. The toilet had overflowed and wet the bathroom rugs, which had been tossed into the tub. There were moldy dishes in the sink. The front yard was littered with trash that never made it to the dumpster. Sheets hung over the windows. The baby's room was in total disarray." Mrs. Coone discovered that Damon had not been bathed since he had left the hospital. The next day, the mother called Mrs. Coone and asked her if she would take the baby home with her.

A pattern quickly emerged whereby Mrs. Coone accepted the role of Damon's primary caretaker. She took care of him virtually every day, and also took him for his well-baby checkups. She testified that one day the mother called her during a heated argument with the respondent. The baby was crying and Mrs. Coone heard the respondent yell "if this kid doesn't shut up, I'm going to knock his [expletive deleted] head through the wall." Mrs. Coone rushed over to the apartment and found respondent in a rage. She took Damon home with her.

Mrs. Coone testified that she constantly gave her half-sister money for necessities for Damon, and that she "never saw either one of [the parents] purchase anything for [Damon]." She had the baby on his first Thanksgiving and Christmas and neither parent bought him a Christmas gift.

On December 30, 1995, Mrs. Coone visited the parents' apartment and discovered that Damon had numerous bruises on his face. She took him to the emergency room, where the ER physician diagnosed "multiple contusions, force suspected, physical abuse." Dr. Susan Hayes, Damon's pediatrician, testified that his injuries were not consistent with the various explanations the parents provided as to how the injuries occurred. The parents initially said that their dog had stepped on Damon, but then subsequently changed their story to other various accidental causes. The respondent stated that he did not take his son to the doctor because he was afraid they would think it was a case of child abuse.

The Department of Children's Services (DCS) took temporary protective custody of Damon shortly after his injuries were discovered. On January 2, 1996, the parents voluntarily consented to temporarily place Damon with the Coone family. On February 19, 1996, the Hamilton County Juvenile Court ordered that temporary legal custody of Damon be placed with the Coones. The respondent was charged with, and eventually pled guilty to, child abuse and neglect.

Melanie Moyer, the DCS case manager in charge of Damon's case, testified that from March 1996 through the end of 1996, respondent never made a request to her that custody of Damon be returned to him. A visitation schedule for respondent was worked out with the Coones and the DCS. Mrs. Coone testified that "I would say 90 percent of the time" the parents would not show up for visitation and that when they did, neither one wanted to feed or change their son's diaper, and that

4

they stayed for only short periods of time. Mrs. Coone testified that on one occasion during visitation respondent offered to let her have the baby if she would buy him a new Bronco truck.

Mrs. Coone kept detailed visitation records. These records show that between April 24, 1996 and June 11, 1996, respondent visited his child four times, for a total of two hours. Between June 11 and July 29, respondent missed five scheduled visitations and visited Damon twice for a total of 65 minutes. He did not show up for any scheduled visitations during the months of August, September or October 1996. Between November 5 and December 3, respondent had visitation on five occasions.

It is undisputed that the respondent did not pay any child support to the Coones during 1996. Respondent testified that he offered gifts of essential items and toys to the Coones, but that they refused them, saying they were not necessary. Mrs. Coone testified that she never received any support from the respondent.

The Coones filed their petition on December 6, 1996. After hearing all the evidence, the trial court found that "Sonja and Jim Coone were very credible witnesses and their testimony was supported by the testimony of other witnesses." The court reached "the inescapable conclusion that [respondent] physically injured his son and he falsely denied his actions." The trial court held:

> This Court finds the evidence clear and convincing that the natural father abandoned his child within the meaning of the law and, further, the evidence was clear and convincing that it is in the best interest of the minor child, Damon Alan Kratochvil, that the parental rights of Danny Alan Kratochvil be terminated.

Termination of parental rights is governed by T.C.A. § 36-1-113, which provides in relevant part:

(g) Termination of parental or guardianship rights may be based upon any of the following grounds:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

T.C.A. § 36-1-102(1)(A) provides the following definition of "abandonment":

"Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;

\*                \*                \*                \*

(B) For purposes of this subdivision (1), "token support" means that the support, under the circumstances of the individual case, is insignificant given the parent's means;

(C) For purposes of this subdivision (1), "token visitation" means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child;

(D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means that, for a period of four (4) consecutive months, no monetary support was paid or that the amount of support paid is token support;

(E) For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation;

(F) Abandonment may not be repented of by resuming visitation or support subsequent to the filing of any petition seeking to terminate parental or guardianship rights or seeking the adoption of a child; and

(G) "Abandonment" does not have any other definition except that which is set forth herein, it being the intent of the general assembly to establish the only grounds for abandonment by statutory definition. Specifically, it shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights and responsibilities in order for a determination of abandonment to be made. Decisions of any court to the contrary are hereby legislatively overruled;

We find that the record is replete with clear and convincing evidence that the respondent has abandoned his son, as that term is statutorily defined. It is clear that respondent engaged in mere perfunctory and token visitation with Damon during the nine months prior to the filing of the Coones' petition. Respondent's efforts, if any, regarding financial support of Damon during his first year were minimal at best. Most importantly, it is abundantly clear that returning Damon to respondent's custody would be substantially detrimental to him, and that his best interests are served by terminating respondent's parental rights and allowing the petitioners to adopt him. In this regard, Dr. Hayes testified as follows:

> Q: Okay. In your opinion is [Damon] Alan Kratochvil very bonded to Sonja and Jim Coone?
>
> A: Absolutely. They're his — if they're not his parents in fact, they're his psychological parents.
>
> Q: Will this child suffer psychological harm if that bond is interrupted?
>
> A: I believe so.

Further, Damon's appointed guardian ad litem, after conducting an independent investigation and hearing all the testimony presented at trial, recommended that it would be in Damon's best interest that respondent's parental rights be terminated. We concur with the trial court's finding that respondent has abandoned his son, and with its conclusion that his parental rights should be terminated.

We now turn to respondent's constitutional arguments. Respondent first argues that he was denied due process because a "petition to set child visitation" which he filed in Hamilton County Juvenile Court was never heard. The respondent testified that he went to Juvenile Court several times in an attempt to get visitation set, but that the clerk's office "gave him the run around." There

is nothing in the record to indicate that the petition, filed September 10, 1996, was ever brought to the Juvenile Court's attention.

We note two pertinent facts regarding respondent's petition in Juvenile Court. First, on the date respondent filed his petition, September 10, he was in the middle of a three-month period in which he missed every scheduled visitation with Damon. Second, the record contains a motion for visitation filed by respondent in Hamilton County Chancery Court on January 30, 1997, which was promptly addressed and heard by the court some ten days later, and disposed of by agreement of the parties. Under these circumstances, it is clear that respondent was afforded a full and fair hearing on his request for visitation, and his due process right was not violated.

Secondly, in a rather vague argument, respondent contends that his constitutional rights were violated because the DCS did not prepare a foster care plan for Damon as contemplated by T.C.A. § 37-2-403(a)(1), which requires that "[w]ithin thirty (30) days of the date of foster care placement, an agency shall prepare a plan for each child in its foster care." However, in this case a foster care plan was not required under the terms of the statute, which defines "foster care" at T.C.A. § 37-2-402(5) as follows:

> "Foster care" means the temporary placement of a child in the custody of the department of children's services or any agency, institution or home, whether public or private, for care outside the home of a parent or relative (by blood or marriage) of the child, whether such placement is by court order, voluntary placement agreement, surrender of parental rights or otherwise. Foster care shall cease at such time as the child is placed with an individual or individuals for the purpose of the child's adoption by the individual or individuals or at such time as a petition to adopt is filed, whichever occurs first, or at such time as the child is returned to or placed in the care of a parent of relative. [emphasis added].

The DCS case worker testified that she did not prepare a foster care plan in this case because "[a] foster care plan is prepared if the child is in State's custody. But since a relative or when

8

temporary custody is granted to relatives, then a foster plan is not done." Thus, respondent's argument regarding a foster care plan is without merit.

In conclusion, we find the trial court's decision terminating respondent's parental rights is supported by clear and convincing evidence in the record, and affirm the judgment in its entirety. The case is remanded for such further action as may be necessary. Costs on appeal are assessed to the appellant.

_____
Don T. McMurray, Judge

CONCUR:


_____
Houston M. Goddard, Presiding Judge


_____
William H. Inman, Senior Judge

IN THE COURT OF APPEALS
AT KNOXVILLE

IN THE MATTER OF:           )      HAMILTON CHANCERY
                            )   C.A. NO. 03A01-9712-CH-00536
The adoption of             )
                            )
   DAMON ALAN KRATOCHVIL,    )
                            )
            A Minor,        )
                            )
by                          )
                            )
                            )
JAMES L. COONE and SONJA    )
COONE,          )   HON. R. VANN OWENS
                            )         CHANCELLOR
     Petitioners-Appellees  )
                            )
                            )
vs.             )
                )
                )
                )
DANNY ALAN KRATOCHVIL,       )
                )
     Respondent-Appellant )   AFFIRMED AND REMANDED

## JUDGMENT

This appeal came on to be heard upon the record from the Chancery Court of Hamilton County, briefs and argument of counsel. Upon consideration thereof, this Court is of opinion that there was no reversible error in the trial court.

We affirm the judgment of the trial court. The case is remanded for such further action as may be necessary. Costs on appeal are assessed to the appellant.

PER CURIAM